## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 10-01259-TLM** |
| **RICHARD JOSEPH BRONSON and** | ) | |
| **STACEY LYNN BRONSON,** | ) | |
| | ) | **Chapter 13** |
| Debtors. | ) | |
| _____ | ) | |

### MEMORANDUM OF DECISION
_____

Before the Court is the question of confirmation of the chapter 13 plan of joint debtors Richard and Stacey Lynn Bronson ("Debtors").[1]  An objection to confirmation was raised by the standing chapter 13 trustee, Kathleen McCallister ("Trustee").   Hearing was held on January 28, 2011, and the issues taken under advisement.  This decision constitutes the Court's findings of fact and conclusions of law under Rules 9014 and 7052.

**FACTS**[2]

Debtors filed a voluntary chapter 13 petition, schedules and statements on

---

[1]  Unless otherwise indicated, all statutory references including those to chapter and section are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532.  All rule references are to the Federal Rules of Bankruptcy Procedure.

[2]  The facts are based upon the testimony of Richard Bronson at hearing on January 28, Trustee's exhibits (Nos. 200–208) and Debtors' exhibits (Nos. 100-E, 100-G and 104) admitted at that same hearing, and the records of the Court of which judicial notice is taken under Fed. R. Evid. 201.

April 30, 2010.  Ex. 200.  Their chapter 13 plan was filed that same date.  Ex. 201

("Plan").  They also filed on that date their initial Form 22C (Chapter 13

Statement of Current Monthly Income and Calculation of Commitment Period and

Disposable Income).  Doc. No. 3.  Later, Debtors replaced this form by an

amended Form 22C filed on September 20, 2010.  Ex. 202 ("Form 22C").[3]

### A.    Income and disposable income

Debtors' Form 22C establishes that Debtors were "above-median-income"

debtors and that the "applicable commitment period" under § 1325(b)(4)(A)(ii)

was therefore five years.  Ex. 202 at lines 12–17.  The above-median-income

status of Debtors and the requirement of a five-year plan are not in dispute.

The current monthly income ("CMI") calculated under § 101(10A) and

shown on Form 22C is $8,409.00.  *Id.* at lines 1–11, 20, 53.  This figure is based,

first, on gross income of Debtor Richard Bronson of $8,352.00, an amount

representing the six-month average of all income received by him in the CMI

period.  In turn, this figure is based on the average gross monthly incomes he

received from employer Micron ($6,843.00) and from employer Indak

($1,509.00).  *Id.* at 11.  Mr. Bronson explained at the hearing that he had

---

[3]  Debtors docketed the same with the notation that it was "[a]mended to accurately
reflect CMI income [*sic*] and expenses."  *See* Doc. No. 29.  It increased both total current monthly
income and monthly disposable income from the amounts shown on Doc. No. 3.  Debtors'
attorney had been replaced by the time of the amendment.  Both Trustee and Debtors commence
their analysis with the amended Form 22C, Ex. 202.

MEMORANDUM OF DECISION - 2

previously worked out of state, lost his job, moved to Idaho in October, 2009, and started his employment with Micron in November, 2009. Since bankruptcy occurred in April, 2010, these events occurred during the CMI period and are thus reflected in the detail of Form 22C.

Form 22C also includes a $57.00 CMI amount for Debtor Stacey Bronson. Mr. Bronson testified that she lost her job, and was now unemployed. Form 22C reflects only incidental income for Mrs. Bronson in the 6th and 5th months before filing, resulting in the noted average CMI. This $57.00 figure, when added to Mr. Bronson's CMI of $8,352.00, results in the total CMI of $8,409.00 reflected on Form 22C.

### 1.    Schedule I

In addition to calculating current monthly income on Form 22C, debtors are required to file Schedules I and J setting forth actual income and expenses. Debtors here did so. The first version was contained in their initial filing, Ex. 200. The gross monthly income shown on Debtors' originally filed Schedule I is $8,077.00 for Richard Bronson and $0.00 for Stacey Bronson. The available net monthly income after expenses was estimated, on Schedule J, to be $975.00.

An amended Schedule I was filed on October 27, 2010. Ex. 206.[4] This

---

[4] An earlier amended Schedule I, Doc. No. 30, appears to be identical to Ex. 206 (Doc. No. 35).

MEMORANDUM OF DECISION - 3

Schedule raised the estimate of Mr. Bronson's average or projected monthly income from $8,077.00 to $8,352.00. *Id.* at 1. However, the Schedule bore a footnote that indicated this figure was Debtor's "CMI average income" and that "his actual current gross income is $8,750." *Id.* The amended Schedule I also included $57.00 per month for Mrs. Bronson's gross income, with a similar footnote reference to CMI; the Schedule otherwise indicated Mrs. Bronson was unemployed and had "no actual income." *Id.* The estimated net monthly income was reduced to $805.00. However, the proposed Plan payment of $975.00 did not change; Debtors' footnote suggested that the "actual current gross income . . . provides the additional income needed to fund the plan." *Id.*

### 2.      Other evidence regarding income

Debtors provided, as required, "payment advices" (payroll check data and other documents) to Trustee. *See* § 521(a)(1)(B)(iv). Trustee's summary of those documents indicates that Mr. Bronson receives a gross pay of $8,763.48 per month. Ex. 207. Trustee's calculations were not contradicted. They also result in a figure that is quite close to the noted $8,750.00 "actual gross income" per month that Debtors acknowledged in their amended Schedule I.

### B.      The Plan

Consistent with their status as above-median-income debtors as established by Form 22C, Debtors proposed a Plan with a five-year term. That Plan

MEMORANDUM OF DECISION - 4

contemplates payments of $975.00 per month, plus commitment of net tax refunds

to further fund the Plan.[5]  Over 60 months, $58,500.00 will be paid to Trustee.

The Plan proposes to pay administrative expenses (which includes

Trustee's fees), attorney's fees of $1,750.00 to Debtors' counsel[6] and several

secured claims totaling $12,547.20 ($2,628.00 on a vehicle obligation, $8,647.80

on another vehicle, $341.40 on a jewelry claim[7] and $930.00 on a computer).[8]  In

rough terms, this Plan funding, after payment of secured claims, attorney's fees,

and administrative expenses, would result in about $38,350.00 being available for

priority and non-priority unsecured creditors.[9]

On September 20, the amended Form 22C was filed.  Ex. 202.  It still

showed a five-year commitment period, but now asserted a disposable income of

---

[5]  Inasmuch as neither Debtors nor Trustee provided any analysis or discussion of the projected amount or impact of tax refunds over the life of the Plan, the Court limits its discussion herein to the monthly proposed payments into the Plan.

[6]  There was a substitution of Debtors' counsel, but the substituting attorney agreed to payment of the first attorney's unpaid balance of $1,750.00 as his total compensation in the case. Doc. Nos. 26, 27.

[7]  There is evidently a second, smaller secured jewelry claim to the same creditor that is not provided for, and Debtors indicated they would increase monthly payments in an order of confirmation in order to fund this claim.

[8]  The secured claim figures are based on Plan-specified monthly payment amounts, which include interest, over 60 months.  The attorney's fees are to be paid over the initial 18 months of the Plan without interest.

[9]  The Plan proposes to pay priority unsecured tax claims in full.  The Internal Revenue Service has filed a proof of claim asserting a $4,164.64 priority claim, and the State of Wisconsin has filed a proof of claim asserting an $11,254.42 priority claim.  There have been no objections to those tax claims.

MEMORANDUM OF DECISION - 5

$462.48 per month.  *Id.* at line 59.[10]  As mentioned above, *see* note 4, amended

Schedules I and J were simultaneously filed indicating Debtors' net monthly

income was $805.00.  Doc. No. 30.  Those were followed by the identical October

amended schedules, Ex. 206, containing the footnote discussed previously to the

effect that "[t]he income reflected for Debtor ($8,352) is his CMI average income.

His actual current gross income is $8,750, which provides the additional income

needed to fund the plan.  Joint Debtor's income of $57 is also CMI income, and

Joint Debtor currently has no actual income."

Trustee filed an objection to confirmation.  Doc. No. 42 ("Objection").

Therein she asserted, *inter alia*, that the change in Mr. Bronson's employment

required consideration of his current gross income, rather than the CMI reported

on Form 22C, in determining whether Debtors' Plan provided for payment of all

of Debtors' projected disposable income to unsecured creditors, as required by

§ 1325(b)(1)(B).[11]  The question of confirmation, and the Objection, were

---

[10]  For ease of reference, this would result in a requirement that the Plan pay at least $27,748.80 to holders of unsecured claims were there to be an objection under § 1325(b)(1).

[11]  Section 1325(b) provides, in part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the
(continued...)

MEMORANDUM OF DECISION - 6

presented at the evidentiary hearing on January 28, 2011.[12]

## DISCUSSION AND DISPOSITION

### A.    Current monthly income

"Current monthly income" ("CMI") is a term of art specifically defined by

§ 101(10A).  Debtors here calculated their CMI to be $8,409.00.  Ex. 202.

However, the evidence establishes that this figure is driven, in part, by the fact that

for two months of the six-month CMI period, Mr. Bronson was employed in a

different job, in a different State, at a lower salary.  He is now employed full time

with Micron in Boise, Idaho.  This employment, under the evidence, is stable and

expected to continue.  This is thus the type of "known or virtually certain" change

in the Debtors' financial circumstances that supports an adjustment for purposes of

calculating projected disposable income.  *Hamilton v. Lanning*, ___ U.S. ___, 130

S.Ct. 2464, 2472–75 (2010); *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d

470, 476 (6th Cir. 2010) (new job was a known or virtually certain event at

---

[11] (...continued)
first payment is due under the plan will be applied to make payments to
unsecured creditors under the plan.

[12]  The Court specifically required pre-hearing briefing, and ordered that it be filed by
January 14, 2011. *See* Doc. No. 39.  Debtors did file a memorandum on January 14, Doc. No. 46,
though this submission was bereft of any citation to or analysis of case law.  Trustee failed to
comply with the briefing requirement, filing only the Objection which contained no analysis of
authority.

MEMORANDUM OF DECISION - 7

confirmation justifying change from CMI).[13]  Here, Mr. Bronson's current and

stable income is $8,750.00, as Debtors acknowledged in the footnote to their

amended schedules.  *See* Ex. 206.[14]  This results in an adjusted monthly income of

$8,807.00 ($8,750.00 + $57.00), a $398.00 increase from Debtors' CMI.[15]

Before leaving the issue of income, the Court notes that Trustee's objection

to Debtors' approach to disclosure of Schedule I income is well taken.  For

Debtors to restate the Form 22C CMI as the income on Schedule I served no

purpose.  Form 22C and Schedule I serve different, though related, functions.[16]

### B.    Projected disposable income

Because Debtors are above-median-income debtors, their projected

---

[13]  In *Lanning*, the debtor received a one-time buyout from a former employer that rendered her CMI substantially higher than her actual employment income at and after filing.  130 S.Ct. at 2466–67.

[14]  The Court elects to use this figure, which Debtors acknowledge, rather than the slightly different figure calculated by Trustee.

[15]  *Lanning* indicates that adjustments should occur in cases where the "known or virtually certain" changes are "substantial" or "significant."  *See* 130 S.Ct. at 2471 (in characterizing arguments, stating appropriate adjustments may be made "in *exceptional* cases, where *significant* changes in a debtor's financial circumstances are known or virtually certain") (emphasis added); *id.* at 2475 (noting adjustments are proper "only in *unusual* cases") (emphasis added); *id.* (stating "[i]n cases in which a debtor's disposable income during the six-month look-back period is either *substantially* lower or higher") (emphasis added).  The Court concludes that the $398.00 per month resulting from the change in Mr. Bronson's employment qualifies under the totality of evidence in this case.

[16]  The calculations reflected in Form 22C are tailored to address the "best efforts test" under 1325(b), while Schedules I and J, because they show actual income and expenses, are relevant to determining whether a proposed plan is feasible, a separate confirmation requirement under § 1325(a)(6).  *See In re Moore*, 2011 WL 242345, at *3–4 (Bankr. D. Colo. Jan. 26, 2011).

MEMORANDUM OF DECISION - 8

disposable income is calculated by reducing CMI by the "amounts reasonably

necessary to be expended" found in the means test of § 707(b)(2)(A) and (B).  *See*

§ 1325(b)(2) & (3); *In re Thiel*, Case No. 10-00434-TLM, (Bankr. D. Idaho Mar.

1, 2011).  The fact, debated at length by Trustee and Debtors, that Debtors

estimated transportation expenses on Schedule J at $1,005.00 per month[17] is of no

consequence.  They are limited to the $472.00 as shown on line 27A of Form 22C.

Unlike the debtors in *Thiel*, Debtors here acknowledge the means test

expenses control, and they did not urge the higher expense amounts shown on

Schedule J.  *See*, *e.g.*, Doc. No. 46 (brief) at 2.  It was Trustee who raised most of

the issues with these expenses on Schedule J, even though § 1325(b)(2) and (3)

required the focus to instead be on the means test expenses.  In the Objection,

Trustee argued that "due to the change in circumstances[18] the Trustee will look at

Schedule I and J to determine if the Debtors are using all available income to fund

the Plan."  Doc. No. 42 at 3.  *Thiel* establishes that such an approach is improper.[19]

The expenses as established by § 707(b)(2)(A) and (B), given their specific

incorporation by § 1325(b)(3), are used in determining projected disposable

---

[17]   This figure is composed of transportation of $805.00 and auto insurance of $200.00, as shown on amended Schedule J.  Ex. 206.

[18]   "The change in circumstances is a result of Mr. Bronson obtaining his job at Micron[.]"  *Id.*

[19]   Precisely how Trustee interpreted *Lanning* or what other authorities or arguments she relied on in urging this approach was difficult to determine.  As mentioned, Trustee failed to file briefing as the Court instructed.  *See* note 12 *supra*.

MEMORANDUM OF DECISION - 9

income from Debtors' adjusted monthly income of $8,807.00.

Deducting the means test expenses as provided in Form 22C, *see* Ex. 202 at

line 58, from Debtors' adjusted monthly income of $8,807.00 results in a monthly

disposable income of $860.48, and a total projected disposable income of

$51,628.80 over the 60-month Plan term.[20]  Section 1325(b)(1)(B) requires that

amount to be paid to "unsecured creditors" under the Plan.  Debtors' Plan,

however, proposes to pay about $13,280.00 less than that amount, or $38,350.00,

to unsecured creditors.[21]  Because it fails to dedicate all of Debtors' projected

disposable income to the payment of unsecured creditors, the Plan does not satisfy

the requirements of § 1325(b)(1)(B) and the Objection in that regard is well taken.

### C.    Good faith

Trustee also raises an objection under § 1325(a)(3), arguing that Debtors'

Plan is not proposed in good faith.  The issue under § 1325(a)(3) is determined by

evaluating the totality of the circumstances as established by the evidence.  *In re*

*Welsh*, 440 B.R. 836, 847–49 (Bankr. D. Mont. 2010) (citing *Leavitt v. Soto (In re*

*Leavitt)*, 171 F.3d 1219, 1224–25 (9th Cir. 1999); *Drummond v. Cavanaugh (In re*

---

[20]  Of course, the increase in average plan payments occasioned by the adjustment to
Debtors' CMI will result in a corresponding increase in the administrative expense payment at
line 50 of Form 22C.  However, this change in administrative expenses is relatively minor and
would not alter the Court's conclusion in this case.

[21]  *See supra* notes 5–9 and accompanying text regarding Debtors' present Plan funding.

MEMORANDUM OF DECISION - 10

*Cavanaugh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000)).[22]

The Court concludes that Trustee failed to substantiate the objection under

§ 1325(a)(3).  Certain of Trustee's contentions, such as an allegedly unexplained

disposition of substantial pension funds, were shown to be misunderstandings

based on typographic errors.  Others, like failure to cooperate or failure to provide

documents requested, were rebutted by the testimony.

Given that an amended plan will be required in order to deal with the

projected disposable income increase that results from the $398.00 upward

adjustment to CMI, the Court will reserve any further discussion of the question of

good faith.  Obviously, the issue of good faith must be evaluated in connection

with the precise terms of the amended plan that is placed before the Court, and on

the evidence presented in connection therewith, should such a § 1325(a)(3)

objection be raised.  *See* Fed. R. Bankr. P. 3015(f) (evidence need not be taken on

---

[22]  In *Welsh*, the court noted that a "good faith" objection based on above-median-income
debtors' payments to secured creditors was not well taken because such payments were
authorized under the means test.  440 B.R. at 848–49.  Further, in considering and rejecting
another "good faith" objection (this one alleging that debtors' failure to use SSI benefits to
increase plan payments was "egregious" behavior), *Welsh* noted that courts generally avoid
construing one provision in a statute so as to suspend or supercede another, and that "good faith"
objections that run afoul of other, more specific BAPCPA provisions should be overruled.  *Id.* at
849–50.  This Court agrees that "good faith" is not always an effective talismanic invocation
every time a trustee or creditor dislikes something in a debtor's plan.  *See In re Westing*, 2010
WL 2774829, at *3 n.9 (Bankr. D. Idaho July 13, 2010) (citing *Matter of Prine*, 10 B.R. 87, 81
I.B.C.R. 19 (Bankr. D. Idaho 1981)).  This is particularly the case when a debtor's proposal
conforms to other Code requirements and it is precisely those provisions that chafe the objector.
Section 1325(a)(3) serves an important purpose, but does not provide a reservoir of unlimited
opportunity to rearrange chapter 13 plan proposals.  It therefore should be judiciously alleged and
pursued by objectors.

MEMORANDUM OF DECISION - 11

issue of good faith absent timely objection).

**CONCLUSION**

Richard Bronson's employment at Micron, which commenced during the six-month period used under § 101(10A) to establish CMI, is a "known or virtually certain" change that leads the Court to conclude the CMI calculated on Debtors' Form 22C should not be determinative in establishing projected disposable income in this case.  Thus, Debtors' Plan, which relies on the Form 22C calculation of CMI, does not apply all of Debtors' projected disposable income to payment of unsecured creditors.  The Court will deny confirmation of the Plan now before it, without prejudice to the filing of an amended plan.  An order will be entered in accordance with this Decision.

DATED: March 10, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12